UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA**,   )<br>    )<br>Plaintiff,   )<br>    )<br>v.   )   Criminal Case No. 05-342-17 (RCL)<br>    )<br>**GERMAN VILLEGAS-MEJIA**   )<br>a.k.a. "El Doctor" (17)   )<br>    )<br>Defendant.   )<br>_____ ) | |

**GOVERNMENT'S MOTION TO ADMIT EVIDENCE OF
OTHER CRIMES UNDER RULE 404(b)**

The United States of America, by and through Patrick H. Hearn, Trial Attorney, Narcotic and Dangerous Drug Section, United States Department of Justice, hereby moves to admit other crimes evidence against defendant German Villegas-Mejia ("Villegas"), related to a 1998 money laundering conviction in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i). In support of this motion, the Government relies on the following points and authorities and any others that may be cited at a hearing on this motion:

**A.     The Present Case**

This case involves a significant drug trafficking organization operating in Colombia, Jamaica, Panama, and Mexico. Members of the organization transported cocaine from the northern coast of Colombia, through Mexico, and into the United States. The evidence in this case includes, but is not limited to, three seizures of cocaine and "go-fast" boats in international waters, two seizures of trucks carrying cocaine in Colombia, cooperating/government witnesses, surveillance, and hundreds of legally authorized wiretapped telephone conversations, intercepted

in Colombia and Jamaica, which detail defendants' drug trafficking activities. The evidence also shows that Villegas, an organizer of this drug trafficking organization, played a vital role in this charged conspiracy by arranging the financing for the cocaine purchases and shipments, as well as facilitating the actual transportation of the cocaine.

On September 14, 2005, a grand jury sitting in the District of Columbia returned the first indictment in this case; on January 3, 2006, a superseding indictment expanded the number of defendants. Villegas was charged for the first time in a second superseding indictment returned on April 18, 2006; on May 5, 2008, the grand jury issued a third superseding indictment. In the pending third superseding indictment, the grand jury charged Villegas with two counts:

- Count 1: In Colombia and elsewhere, from April 28, 2005 up to and including the date of indictment, Villegas engaged in a conspiracy to manufacture and distribute five kilograms or more of cocaine, intending and knowing that the cocaine would be unlawfully imported into the United States, in violation of 21 U.S.C. §§ 959, 960, and 963;

- Count 4: On or about January 22, 2006, in Colombia and elsewhere, Villegas knowingly and intentionally attempted to distribute five kilograms or more of a mixture or substance containing a detectable amount of cocaine, intending and knowing that the cocaine would be unlawfully imported into the United States, in violation of 21 U.S.C. § 959, and 18 U.S.C. § 2.

**B.   Evidence of Other Crimes**

On November 4, 1997, an undercover agent from the Federal Bureau of Investigation, posing as a corrupt banker, met with Villegas at a restaurant in Manhattan. The undercover agent identified himself as a banker who would be willing to launder large amounts of drug proceeds for Villegas. Intelligence indices had previously revealed that Villegas was a money broker who regularly arranged for the importation of millions of dollars in drug proceeds to Colombia. This meeting was monitored and recorded.

During the meeting, the undercover agent offered the service of being able to arrange for the pickup of drug proceeds, which the undercover agent would then wire to anywhere in the world. Villegas told the undercover agent that he had numerous large contracts with individuals in Colombia (referring to pickup/money laundering contracts) and that he moved an average of approximately $3 million per week. Villegas also stated that he had businesses in Chicago and Miami, which the undercover agent could handle. Villegas and the undercover agent agreed that, for a commission of two percent, the undercover agent would begin by transferring money to Miami. Villegas commented that he liked to move money to Miami because it was easier to transport the money from Miami to Colombia. The undercover agent told Villegas that wire transfers were more effective and less risky than bulk shipments, but Villegas vehemently disagreed. Villegas stated that money could not be seized at the airport because there was no drug or money smell (meaning the dogs could not detect the scent) and that money could not be x-rayed. Villegas also stated that the only way "they" (meaning law enforcement) could find the money was by physically searching the bag itself. Villegas boasted that his system worked and that he had been successful in moving United States dollars to Colombia. Villegas told the undercover agent that the undercover agent would receive a call from a female who would arrange for the pickup of $125,000. Villegas informed the undercover agent that he had one million dollars ready to move to Florida and offered the undercover agent part of the money as a test run, with a five percent commission to move the money. An agreement was reached, whereby the one million dollars would be picked up, and the undercover agent would wire part of the money to Mexico.

The following day, November 5, 1997, the undercover agent met with Maximiliano Rios-Escalante and Marco Espino-Garcia in Manhattan to pick up the money. The money, which was being stored in the trunk of Espino-Garcia's vehicle, was contained in two black bags. The undercover agent opened one bag, confirmed the money was in it, and closed the bag. After the undercover agent gave a prearranged signal indicating that the money was present, agents arrested Espino-Garcia and Rios-Escalante. Villegas had been arrested earlier that day at J.F.K. International Airport, shortly after he boarded a flight to Miami.

A grand jury returned an indictment, alleging that Villegas, Espino-Garcia, and Rios-Escalante:

> "knowingly and intentionally conspire[d] to conduct financial transactions, to wit: the pick up, delivery and storage of currency, which involved the proceeds of a specified unlawful activity, to wit: narcotics trafficking, knowing that the transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership and control of the proceeds of said specified unlawful activity and knowing that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i)."

United States v. Villegas, 9:97-cr-01093-JM-1 (E.D.N.Y.), ECF Document 20. Ultimately, Villegas pleaded guilty, and a judgment was entered on June 15, 1998. Villegas, 9:97-cr-01093-JM-1 (E.D.N.Y.), ECF Documents 32, 47-48. Villegas was sentenced to two years imprisonment and three years of supervised release. Villegas, 9:97-cr-01093-JM-1 (E.D.N.Y.), ECF Document 48.

C.   **Legal Standards Supporting Admissibility of the Other Crimes Evidence Pursuant to Federal Rule of Evidence 404(b)**

Rule 404(b) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes . . ." Fed. R. Evid. 404(b). Rule 404(b) is a rule of inclusion rather than exclusion. United States v. Douglas, 482 F.3d 591, 596 (D.C. Cir. 2007), quoting United States v. Bowie, 232 F.3d 923, 929 (D.C. Cir. 2000). "[A]lthough the first sentence of Rule 404(b) is 'framed restrictively,' the rule itself 'is quite permissive,' prohibiting the admission of other crimes evidence 'in but one circumstance' – for the purpose of proving that a person's actions conformed to his character." United States v. Crowder, 141 F.3d 1202, 1206 (D.C. Cir. 1998) (*en banc*); See Bowie, 232 F.3d at 930 ("The rule does not prohibit character evidence generally, only that which lacks any purpose but proving character."). Thus, evidence of other crimes, wrongs or acts is admissible under Fed. R. Evid. 404(b) if offered for any permissible purpose. Permissible purposes include – but are not limited to – proof of intent, motive, opportunity, plan, knowledge, identity, or absence of mistake or accident, United States v. Miller, 895 F.2d 1431, 1436 (D.C. Cir.), and corroboration of other evidence, Bowie, 232 F.3d at 933.

Other crimes evidence should be admitted if the following three criteria are met:

> 1) the evidence of other crimes or acts is relevant in that it has "**any tendency** to make the existence of **any fact** that is of consequence to the determination of the action more probable or less probable than it would be without the evidence," Fed. R. Evid. 401; 2) the fact of consequence to which the evidence is directed relates to a matter in issue other than the defendant's character or propensity to commit crime; and 3) the evidence is sufficient to support a jury finding that the defendant committed the other crime

or act [citations omitted].

Bowie, 232 F.3d at 930 (emphasis added). If the evidence is relevant and offered for a reason other than defendant's character or propensity, "it is admissible unless excluded under other rules of evidence such as Rule 403." Id.; see United States v. Washington, 969 F.2d 1073, 1080 (D.C. Cir. 1992) (establishing a two-step analysis to the admission of 404(b) evidence - first, whether the evidence is relevant and probative of some issue other than the defendant's character, and second, whether the evidence is prohibited under any other rule of admissibility).

     Here, the other crimes evidence should be admitted because: 1) it tends to make a fact of consequence more probable; and 2) it relates to matters other than Villegas' character. Specifically, Villegas' prior conviction for money laundering will assist in proving his motive, opportunity, knowledge, intent, preparation, plan and/or absence of mistake or accident to conspire with others to distribute cocaine into the United States (Count 1), as well as his motive, opportunity, knowledge, intent, preparation, plan and/or absence of mistake or accident to attempt to distribute cocaine into the United States on or about January 22, 2006 (Count 4). Indeed, as evidenced by the plain language of the offenses charged in the Indictment, the Government is required to prove Villegas' intent and knowledge to both conspire to and attempt to distribute cocaine. Thus, it is clear that intent and knowledge are "facts of consequence to the case," and "[i]ntent and knowledge are ... well-established non-propensity purposes for admitting evidence of prior crimes or acts." Bowie, 232 F.3d at 930. Villegas' money laundering conviction was based upon the specified unlawful conduct of concealing narcotics proceeds for Colombian drug traffickers, as well as others. As such, this evidence is particularly relevant to show defendant Villegas' knowledge, intent, and lack of mistake in his participation in the

indicted conspiracy and attempted distribution of cocaine, which involved procuring cocaine and financing cocaine shipments. Thus, it logically follows that the Government is **not** seeking to admit Villegas' prior conviction solely as propensity evidence. Accordingly, this evidence is admissible pursuant to Rule 404(b).

In United States v. Mickens, 926 F.2d 1323 (2d Cir. 1991), the defendant was convicted of cocaine distribution and money laundering. On appeal, defendant argued that the district court erred in admitting evidence, pursuant to Fed. R. Evid. 404(b), of his prior involvement in narcotics activity, including his 1983 conviction for possessing and selling cocaine. Id. at 1329. The Second Circuit found that "Mickens' prior involvement in narcotics activity was relevant to the prosecution's tax evasion and money laundering theory that narcotics sales provided the cash which Mickens spent so lavishly." Id. In other words, the evidence of a prior drug crime was relevant to the defendant's intent to commit money laundering. See United States v. Fasciana, 226 F.Supp.2d 445, 457 (S.D.N.Y. 2002) (citing Mickens for the proposition that admission of evidence of prior narcotics activity was proper "because it was 'relevant to the second element of the money laundering charge, i.e., that the defendant knew that the laundered funds derived from an unlawful source'.").

Indeed, a similar conclusion was reached in United States v. Nahoom, 791 F.2d 841, 845 (11th Cir. 1986), wherein the Eleventh Circuit found that a prior money laundering conviction was admissible, under Fed. R. Evid. 404(b), to demonstrate the defendant's intent to commit the crime charged - conspiracy to import and possess marijuana. Specifically, the Nahoom Court held:

> "[D]efendant's plea of not guilty in a conspiracy case places his intent at issue, and intent

>remains at issue unless the defendant affirmatively removes it from the case. United States v. Burke, 738 F.2d 1225, 1229 (11th Cir.1984). Because Nahoom pled not guilty to the conspiracy charges, his intent was at issue in this case. Evidence that Nahoom had engaged in money laundering activity on a previous occasion was obviously probative on the question of whether Nahoom possessed the requisite intent to commit the crimes with which he was charged. The extrinsic offense evidence related to an issue other than appellant's character."

Id. Thus, in accordance with Nahoom, Villegas' prior money laundering conviction is admissible as evidence of his intent to participate in the crimes alleged in the instant indictment.

In sum, because Villegas' prior money laundering conviction and its underlying facts are probative of intent and knowledge, such evidence is being offered "to show more than [Villegas'] character," and thus should not be barred under Rule 404(b). Washington, 969 F.2d at 1081.

**D. The Evidence is More Probative Than Prejudicial.**

As discussed above, inasmuch as this other crimes evidence is probative, it should be admitted unless its probative value is substantially outweighed by its prejudicial effect. Fed. R. Evid. 403. Even in close cases, the rule favors admitting evidence of prior bad acts. See United States v. Johnson, 802 F.2d 1459, 1463-64 (D.C. Cir. 1986). Indeed, if there is a purpose other than character for which to introduce the prior bad act evidence, introduction of such evidence is not "unfair," even if it may tend to paint the defendant as a criminal. United States v. Harrison, 679 F.2d 942, 948 (D.C. Cir. 1982). Thus, in the instant matter, even though the other crimes evidence involves narcotics proceeds, introduction of this evidence is not unfairly prejudicial. This Circuit has held:

>"Rule 403 does not provide a shield for defendants who engage in outrageous acts, permitting only the crimes of Caspar Milquetoasts to be described fully to a jury. It does not generally require the government to sanitize its case, to deflate its witnesses' testimony, or to tell its story in a monotone. It does not bar powerful, or even

> 'prejudicial' evidence. Instead, the Rule focuses on the 'danger of *unfair* prejudice,' and gives the court discretion to exclude evidence only if that danger '*substantially* outweigh[s]' the evidence's probative value."

United States v. Gartmon, 146 F.3d 1015, 1020 (D.C. Cir. 1998) (citation omitted, emphasis in original).

    Notably, the danger that this Court must weigh is not the danger that the other crimes evidence will weaken defendant's defense, but rather the danger that the jury will misuse the evidence by inferring that, merely because defendant engaged in these prior bad acts, he is prone to commit the charged offenses. See United States v. Mitchell, 49 F.3d 769, 777 (D.C. Cir. 1995). The law in this Circuit is clear that, in balancing the probativeness and prejudice of other crimes, "it is a sound rule that the balance should generally be struck in favor of admission when the evidence indicates a close relationship to the offense charged." United States v. Harrison, 679 F.2d 942, 948 (D.C. Cir. 1982) (quoting United States v. Day, 591 F.2d 861, 878 (D.C. Cir. 1978)). Here, the proffered evidence of other crimes bears a close relationship to the offenses charged. The other crimes evidence involves proceeds from narcotics trafficking, as well as Villegas' role in laundering money for Colombian drug traffickers. Similarly, the evidence at trial will show that Villegas played a vital role in the charged conspiracy by using the proceeds of narcotics trafficking to purchase cocaine and to finance shipments of cocaine from Colombia to the United States.

    If at anytime, before or during trial, the government learns of additional potential 404(b) evidence, it will promptly advise the Court and counsel for the defendants.

## CONCLUSION

For all of the foregoing reasons, the Government respectfully requests that the Court grant the Government's Motion to Admit Evidence of Other Crimes Under Rule 404(b).

Respectfully submitted,

WAYNE C. RAABE, Acting Chief
Narcotic and Dangerous Drug Section

_____/s/_____
Patrick H. Hearn
Trial Attorney
Narcotic and Dangerous Drug Section
U.S. Department of Justice
1400 New York Avenue, N.W.
Washington, D.C.  20005
(202) 305-7606

## CERTIFICATE OF SERVICE

I hereby submit that, on this 22nd day of August, 2008, a copy of the foregoing Government's Motion to Admit Evidence of Other Crimes was filed electronically with the Clerk of the Court and served on all counsel of record through the Electronic Case Filing System

_____/s/_____
Patrick H. Hearn
Trial Attorney
Narcotics and Dangerous Drug Section
U.S. Department of Justice
1400 New York Avenue, N.W.
Washington, D.C.  20005
(202) 305-7606
patrick.hearn@usdoj.gov